UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORTHOBOND CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>MARC H. BUREL, et al.,<br><br>Defendants. | Civil Action No. 22-217 (RK) (RLS)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

**SINGH, United States Magistrate Judge.**

**THIS MATTER** comes before the Court upon the Motion of non-party, Alicia A. Russo, Esq. ("Attorney Russo"), to Quash a Subpoena served by Defendants Marc H. Burel, Randell Clevenger, Ph.D., Gordon D. Donald, M.D., Cheoljin Kim, Ph.D., and Molecular Surface Technologies, LLC ("MST") (collectively, "Defendants"), or, in the alternative, for the entry of a Protective Order. (Dkt No. 88). Defendants oppose the Motion, (Dkt. No. 97), to which Attorney Russo has replied, (Dkt. No. 99). The Court has fully reviewed the submissions of the parties and considers the same without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Attorney Russo's Motion to Quash is hereby **DENIED**, and Attorney Russo's Motion for a Protective Order, in the alternative, is **GRANTED**.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

As the facts are well-known to the parties and the Court, they are not set forth at length. Instead, only those facts and procedural history related to the instant application are discussed herein.

1

Attorney Russo is an attorney at Venable LLP and appears *pro hac vice* on behalf of Plaintiff Orthobond Corporation ("Plaintiff" or "Orthobond") in this matter.  (*See* Dkt. No. 1 at p. 49; Dkt. No. 21).[1]  This action arises out of Plaintiff's allegations that the individual defendants breached certain employment agreements with Plaintiff and that all Defendants engaged in unfair competition and misappropriated Plaintiff's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, (the "DTSA") and the New Jersey Trade Secrets Act, N.J.S.A. § 56:15-1 *et seq.*, (the "NJTSA").  (*See generally* Dkt. No. 1).  Plaintiff and MST compete in the area of antimicrobial surface technology with application in a variety of industries.  (*See* Dkt. No. 1 at ¶¶ 16, 37, 71).

More specifically, and in relevant part, Plaintiff alleges that MST filed patent applications with the United States Patent and Trademark Office ("USPTO")—U.S. Patent App. No. 16/383,263 (the "'263 Application"), U.S. Patent App. No. 16/727,439 (the "'439 Application"), U.S. Patent App. No. 16/906,573 (the "'573 Application"), and U.S. Patent App. No. 17/135,494 (the "'494 Application") (collectively, the "MST Patent Applications")—which purported to claim technology containing Plaintiff's confidential and proprietary information and trade secrets developed in whole or substantial part at Plaintiff by Jordan Katz, Ph.D., the Chief Scientific Officer.  (*See* Dkt. No. 1 at ¶¶ 73-74, 77, 79, 81).  On or about April 21, 2021, Plaintiff, through its counsel, Attorney Russo, filed a Petition to Institute Derivation Proceeding Pursuant to 35 U.S.C. § 135 as to the '439 Application.  (Dkt. No. 1 at ¶ 76; Dkt. No. 1-9 (Exhibit 16)).  On or about June 30, 2021, Attorney Russo filed a Third Party Preissuance Submission, seeking the USPTO to review patents and patent publications relevant to the examination of the '573

---

[1] All citations to page numbers herein refer to those automatically generated by the electronically filing system (PACER).

Application[2] (the "'573 Third Party Submission"); Plaintiff alleges Attorney Russo filed that Submission on its behalf although Plaintiff is not disclosed in the Submission.[3] (Dkt. No. 1 at ¶ 78; Dkt. No. 1-11 (Exhibit 18)).  On or about December 16, 2021, Attorney Russo filed a Third Party Preissuance Submission, seeking the USPTO to review patents and patent publications relevant to the examination of the '494 Application (the "'494 Third Party Submission"); Plaintiff alleges Attorney Russo filed that Submission on its behalf although Plaintiff is not disclosed in the Submission.  (Dkt. No. 1 at ¶ 80; Dkt. No. 1-14 (Exhibit 21)).

Defendants deny Plaintiff's allegations and specifically assert through their Seventh Affirmative Defense that the USPTO, having considered Plaintiff's USPTO filings, granted the MST Patent Applications, purportedly finding that the technology was patentable "and/or patentably distinct" from Plaintiff's patents.  (Dkt. No. 98 at p. 28, ¶ 8).

On January 3, 2023, Defendants served a subpoena upon Attorney Russo, seeking her testimony to take place in New York, New York (the "Subpoena").  (Dkt. No. 88-5; Dkt. Nos. 97-1, -2, and -3).  On January 17, 2023, counsel for the parties met and conferred as to the Subpoena, during which the parties discussed what information was sought through Attorney Russo's testimony.  (*See* Dkt. No. 88-3 at ¶ 3).  Through the meet and confer process, Defendants offered

---

[2] Pursuant to 35 U.S.C. § 122(e), any third party that meets the statutory and regulatory requirements on timing, fees, and content "may submit for consideration and inclusion in the record of a patent application, any patent, published patent application, or other printed publication of potential relevance to the examination of the application . . . ." 35 U.S.C. § 122(e); *see also* 37 C.F.R. § 1.290.

[3] Plaintiff raises that Defendants originally contended that they served the Subpoena directed to Attorney Russo in part because the Third Party Submissions did not name Plaintiff and, thus, Defendants were not aware that Attorney Russo filed them on behalf of Plaintiff.  (*See* Dkt. No. 88-1 at p. 14).  However, Plaintiff alleged in its Complaint, filed on January 18, 2022, that "Orthobond filed" the Third Party Submissions, and Defendants acknowledge those allegations in responding to the instant Motion.  (*See* Dkt. No. 1 at ¶¶ 78, 80; Dkt. No. 97 at p. 8).

3

that some of the sought-after testimony could be obtained through Plaintiff's Rule 30(b)(6) deposition designee and sent Plaintiff's counsel the "Additional 30(b)(6) Courtesy Topics."[4] (*See* Dkt. No. 88-3 at ¶¶ 3-4; Dkt. No. 88-8; Dkt. No. 97-6). Notably, those proposed topics sought testimony as to the '573 Third Party Submission, the '494 Third Party Submission, the circumstances regarding those submissions, and the prior art raised in those submissions, as well as testimony as to the addition of Dr. Katz as a co-inventor to U.S. Patent Application Nos. 15/785,789 ("Plaintiff's '789 Application"),[5] 17/387,350 ("Plaintiff's '350 Application"), and, "presumably," 17/971,197 ("Plaintiff's '197 Application").[6] (Dkt. No. 88-8; Dkt. No. 97-6). Defendants seek the same information from Attorney Russo through the Subpoena. (Dkt. No. 97 at p. 5).

Thereafter, on January 17, 2023, Plaintiff objected to the Subpoena on the bases that it: seeks information protected by the attorney-client privilege and/or attorney work product doctrine; is overbroad, vague, and ambiguous as to scope; is unduly burdensome; and seeks information that can be obtained "by less obtrusive means." (Dkt. No. 88-9; Dkt. No. 97-6). Plaintiff further opposed Defendants' proposed "additional" topics for a Rule 30(b)(6) deposition as being proposed just three days prior the close of fact discovery. (Dkt. No. 88-9; Dkt. No. 97-6; Dkt. No. 97-7).

---

[4] Defendants served a Notice of Rule 30(b)(6) Deposition on Plaintiff on or about December 16, 2022. (*See* Dkt. No. 88-4).
[5] Plaintiff's '789 Application had listed Defendant Dr. Clevenger as the sole inventor and Plaintiff as the applicant and assignee. (*See* Dkt. No. 1 ¶ 78; Dkt. No. 1-12).
[6] Notably, Plaintiff does not presently assert against Defendants these patent applications or the patents that may have issued from these applications. (*See* Dkt. No. 88-1 at p. 13; Dkt. No. 99 at p. 10).

On January 18, 2023, Defendants deposed one of Plaintiff's Rule 30(b)(6) deposition designees, Dr. Katz, who also testified as an individual fact witness under Rule 30(b)(1). (*See* Dkt. No. 88-1 at pp. 10, 13-14). One of the topics of the Rule 30(b)(6) deposition was the "preparation and prosecution" of Plaintiff's '789 Application. (Dkt. No. 88-4; Dkt. No. 88-1 at p. 13). Defendants' original Rule 30(b)(6) topics, while seeking testimony on various of Plaintiff's patent applications, including Plaintiff's '789 Application, did not seek testimony on Plaintiff's '350 Application or Plaintiff's '197 Application. (*See* Dkt. No. 88-4). It appears, however, that Defendants did not ask Dr. Katz any questions in his individual capacity regarding Plaintiff's '789, '350, or '197 Applications. (*See* Dkt. No. 88-1 at p. 14).

On January 23, 2023, Attorney Russo filed the instant Motion. (*See generally* Dkt. No. 88). On February 7, 2023, Defendants filed their Opposition, (*see generally* Dkt. No. 97-1), and, on February 14, 2023, Attorney Russo filed her reply, (*see generally* Dkt. No. 99).

## II.     LEGAL STANDARDS

A non-party objecting to a subpoena may move to quash or modify the subpoena; however, such motion must be brought in the Court where compliance is required. Fed. R. Civ. P. 45(d)(3)(A)-(B). Federal Rule of Civil Procedure 45(d)(3) governs motions to quash or modify a subpoena and provides as follows:

> On timely motion, the court . . . **must** quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A)(i)-(iv) (emphasis added). The movant bears the burden of persuasion to quash a subpoena. *See Occidental Chemical Corp. v. 21st Cent. Fox Am., Inc.*, Civ. No. 18-11273, 2022 WL 2533011, at *4 (D.N.J. July 7, 2022) (slip op.); *see also Memory Bowl v. North*

*Pointe Ins. Co.*, 280 F.R.D. 181, 185 (D.N.J. 2012). If the movant demonstrates that the subpoena "falls outside the scope of permissible discovery, requires disclosure of privileged or other protected matter, or subjects a person to undue burden," the court may quash or modify the subpoena. *Occidental Chem.*, 2022 WL 253011 at *4 (citation omitted). Ultimately, a party serving a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena[,]" which is enforceable by the appropriate district court as defined by the Federal Rules of Civil Procedure. Fed. R. Civ. P. 45(d)(1).

In addition, persons from whom testimony is sought may seek a protective order in either the court where the action is pending or, if a subpoena compels attendance at a deposition, in the court for the district where the deposition will occur. Fed R. Civ. P. 26(c)(1). Upon a showing of good cause, courts may issue protective orders to prevent a subpoenaed person from incurring "annoyance, embarrassment, oppression, undue burden or expense," including by "prescribing a discovery method other than the one selected by the party seeking discovery" or "forbidding inquiry into certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(C)-(D); *see also Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986) (requiring that movant show a "particular need for protection"; "[b]road allegations of harm unsubstantiated by specific examples or articulated reasoning" do not satisfy Rule 26(c)).

A movant is entitled to a protective order if she establishes undue burden or oppression, as measured by:

> (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

6

*Johnston Dev. Grp., Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352-53 (D.N.J. 1990). Entry of a protective order may be appropriate where the discovery sought is irrelevant, privileged, or disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be both relevant and proportional to the needs of the case).

The scope of discovery provided for under Rule 26 similarly applies to discovery sought via a Rule 45 subpoena on a non-party. *See* Fed. R. Civ. P. 45(a)(1); *in re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021); *accord E.S. by and through Sanchez v. Elizabeth Bd. of Educ.*, Civ. No. 20-1027, 2022 WL 2106382, at *2 (D.N.J. June 10, 2022). A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The material "need not be admissible in evidence to be discoverable." *Id.*

Nevertheless, "a non-party to litigation is afforded greater protection from discovery than a party." *Burgess v. Galloway*, Civ. No. 20-6744, 2021 WL 2661290, at *3 (D.N.J. Jan. 28, 2021) (citing *Chazanow v. Sussex Bank*, Civ. No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014)). Moreover, a district court exercises broad discretion in resolving issues as to subpoenas and managing discovery. *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, Civ. No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999); *Forrest v. Corzine*, 757 F. Supp. 2d 473, 477 (D.N.J. 2010) ("Magistrate Judges are given wide discretion to manage cases and to limit discovery in appropriate circumstances.").

### III.  DISCUSSION

As an initial matter, the Court finds the Motion to Quash is not properly before this Court. The district court where compliance is required maintains jurisdiction over applications to quash

or modify a subpoena. Fed. R. Civ. P. 45(d)(3)(A)-(B). While this is the Court where the underlying matter is proceeding, the place of compliance for the Subpoena—i.e., where the deposition is to take place—is located in New York, New York. (*See* Dkt. No. 88-5); *see also* Fed. R. Civ. P. 45(c). Accordingly, this Court finds that it lacks jurisdiction over the pending Motion to the extent it seeks to quash the Subpoena and, therefore, denies the request to quash the Subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure. Nevertheless, this Court exercises jurisdiction over the Motion to the extent it seeks a protective order pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(c)(1) ("A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken."). Accordingly, the Court considers the Motion for the entry of a protective order under Federal Rule of Civil Procedure 26(c).

Through the Motion, Attorney Russo seeks the entry of a protective order because she asserts a variety of objections to the sought-after testimony. More specifically, she contends that the testimony sought through the Subpoena can be obtained through other less intrusive means, would be protected from disclosure by the attorney-client privilege and/or the attorney work product doctrine, is overbroad in seeking irrelevant material for which Defendants do not have a need, would be unduly burdensome, and would cause harm to Plaintiff by burdening its attorneys of record and unduly delaying discovery. (*See* Dkt. No. 88-1).

In opposing the Motion, Defendants contend that the sought-after testimony is relevant to whether certain technology disclosed in MST's patent applications are Plaintiff's confidential information and/or trade secrets. (Dkt. No. 97 at p. 6). Defendants posit that Attorney Russo's citation and reference to prior patents and publications in the '573 and '494 Third Party

Submissions indicate that the technologies claimed in MST's Patent Applications were publicly disclosed through that prior art and, therefore, cannot constitute trade secret or confidential information. (*See* Dkt. No. 97 at pp. 6, 16-17). Defendants also suggest that Plaintiff likely sought to add Dr. Katz as an inventor to Plaintiff's patent applications to give Dr. Katz "better credentials to support any testimony during trial." (Dkt. No. 97 at p. 16).

Here, the Court must consider Federal Rule of Civil Procedure 26 to determine the relevancy, proportionality and privileged nature of the sought-after testimony. *See Johnston*, 130 F.R.D. at 352-53 ("There is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information."). Because Defendants seek to depose Plaintiff's litigation counsel, the Court must also balance Defendants' need for the sought-after testimony with the potential oppressive impact and burden to Plaintiff and "the adversary process itself." *Id.* at 352. In so balancing, the Court considers whether the attorney is a fact witness to the claims or defenses and whether the sought-after testimony is likely "heavily intertwined with privileged or confidential information." *Id.* at 353 (citing *in re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429 (E.D. Pa. 1981)). Depositions of an attorney whose role "was speculative and not central to the dispute" at issue may not be appropriate; whereas depositions of an attorney who was a fact witness to the underlying events may be appropriate. *Id.* (citing *N.F.A. Corp. v. Riverview Narrow Fabrics, Inc.*, 117 F.R.D. 83, 85 n.2 (M.D.N.C. 1987); *Walker v. United Parcel Serv.*, 87 F.R.D. 360, 362 (E.D. Pa. 1980)). A party seeking to preclude the deposition of an attorney "will succeed if it establishes undue burden or oppression," which is determined by considering:

> (1) the relative quality of information in the attorney's knowledge, that is, whether the deposition would be disproportional to the discovering party's needs; (2) the availability of the information from other sources that are less intrusive into the

9

> adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony.

*Id.* at 353.

First, the Court considers the proportionality of the sought-after testimony from Attorney Russo. "In this regard, the information sought must 'concern relevant information that is within the inquiring party's legitimate discovery needs' when assessed against the nature and complexity of the lawsuit, the importance of the issues at stake in the lawsuit and the significance of the substantive issues." *Recchia v. Kellogg Co.*, Civ. No. 10-4899, 2012 WL 762445, at *4 (D.N.J. March 6, 2012) (quoting *Johnston*, 130 F.R.D. at 353). While the Subpoena does not list any topics sought from Attorney Russo, the Court considers Defendants' proposed "Additional" Rule 30(b)(6) Topics and Defendants' "[e]xemplary questions" presented in their opposition brief as reflecting at least some of the categories of testimony Defendants seek from Attorney Russo.[7] (*See* Dkt. No. 88-3 at ¶¶ 3-4; Dkt. No. 88-8; Dkt. No. 97 at p. 16; Dkt. No. 97-6). Defendants seek testimony from Plaintiff's litigation counsel as to the purpose of the '573 and '494 Third Party Submissions, the prior art referenced in those submissions, and why Plaintiff sought to include Dr. Katz as a co-inventor in certain of Plaintiff's patent applications. Defendants proffer that they need this testimony to show that the claimed technology in MST Patent Applications could not be trade secrets or confidential information and to show that Plaintiff sought to add Dr. Katz as a co-

---

[7] Defendants' "[e]xemplary questions" are: "(1) Do you agree that the purpose of each Third Party Submission was to put prior art before the PTO to have the PTO invalidate as either anticipated or obvious claims of the MST '573 patent application? (2) Do you agree that information at the end of each Third Party Submission is provided to form what patent practitioners call a 'claim chart'? (3) In those claim charts, did you align particular pieces of prior art with the text of the then-existing claims to assert that the text in the claims was already party of the prior art?" (Dkt. No. 97 at pp. 9-10).

inventor to certain of Plaintiff's patent applications as a litigation tactic. (Dkt. No. 97 at pp. 15-16).

Here, the Court finds that the relative quality of the sought-after testimony does not weigh in favor of compelling the deposition. More specifically, Defendants have not established the relevancy of Dr. Katz's addition as an inventor to certain of Plaintiff's patent applications and/or patents not asserted in this action. Indeed, those patent applications and patents do not appear at issue in this action, and, in their opposition, Defendants contend that they seek to determine if Dr. Katz was added as only a litigation tactic. While the Federal Rules of Civil Procedure permit, generally, broad discovery, the Rules do not permit fishing expeditions into extraneous topics. Moreover, even if such information as to Dr. Katz's role as a co-inventor were relevant to this trade secret case, as Plaintiff points out, that information would be better obtained from Dr. Katz and/or Plaintiff itself, not Attorney Russo. Testimony from non-party Attorney Russo as an individual fact witness as to the inventorship of Plaintiff's patent applications and/or patents is not related to central factual issues and, "therefore, the relative quality of information does not weigh in favor of compelling the deposition." *Recchia*, 2012 WL 762445, at *5.

Further, the Third Party Submissions may be relevant to claims and defenses in this action to the extent Defendants argue that the asserted trade secrets allegedly claimed in MST's Patent Applications were previously publicly disclosed through prior art. However, Defendants have not sufficiently established a legitimate need to obtain discovery on this topic from a non-party attorney who filed the Third Party Submissions. The documentary record before the USPTO will speak for itself, and issues as to the regulatory process for third party submissions, which Defendants appear to question through their examples, are addressed by the regulatory standards

themselves and/or potential expert testimony, if necessary.[8]  Accordingly, the Court finds that a deposition of Attorney Russo on the sought-after topics is disproportional to any need by Defendants for that information.

    Second, the Court considers whether there are less intrusive means to obtain the sought-after information and finds that Defendants did have alternative means of obtaining the information, but chose not to do so.  Defendants, as they appear to acknowledge, could have sought the testimony from Plaintiff itself through the Rule 30(b)(6) Deposition of Plaintiff or from Dr. Katz as an individual fact witness. (*See* Dkt. No. 97 at p. 15 n.3; *see also* Dkt. No. 97 at p. 9 (noting Defendants' previous offer of three deposition topics "that could be addressed by Attorney Russo *or by a Rule 30(b)(6) designee*" (emphasis added))).  Defendants already have in their possession the Third Party Submissions filed with the USPTO, which contain the prior art that

---

[8]  Defendants cite several cases for the proposition that trial counsel who also serve as patent prosecution counsel with respect to the patents and/or patent applications at issue may be deposed. (*See* Dkt. No. 97 at pp. 13-14).  However, each of the cases cited by Defendants permitted such attorney depositions where there are allegations of inequitable conduct before the USPTO.  *See aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 772 (N.D. Ill. 2005) (permitting a narrowed deposition of patent prosecution counsel to proceed where inequitable conduct is asserted); *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342-44 (S.D.N.Y. 2002) (relying on case law within the Second Circuit and permitting deposition of patent prosecution counsel because the counsel's mental impressions were "crucial" to adjudicating claims of inequitable conduct); *Environ Prods. Inc. v. Total Containment Inc.*, 1996 WL 494132, at *4-5 (E.D. Pa. Aug. 22, 1996) (finding relevant the mental impressions of patent counsel who handled the patent holder's reexamination proceedings where inequitable conduct was raised as an affirmative defense and, thus, denying a motion for a protective order as to counsel's deposition which the court permitted to proceed solely as to the inequitable conduct issues).  Defendants also cite to *ResQNet.com, Inc. v. Lansa, Inc.*, No. 01-3578, 2004 WL 1627170 (S.D.N.Y. Jul. 21, 2004), for the proposition that "in the context of patent disputes, an attorney who prosecuted a patent is subject to be deposed." (Dkt. No. 97 at pp. 13).  However, in that opinion, the Southern District of New York granted the patent prosecution attorney's motion to quash a subpoena and precluded the sought-after deposition because the defense of inequitable conduct had not been explicitly asserted.  *See ResQNet.com*, 2004 WL 1627170, at *4-5.  Here, no allegation of inequitable conduct as to Plaintiff's filings with the USPTO has been asserted.

would be the subject of at least a portion of Attorney Russo's sought-after testimony. (*See* Dkt. No. 88-1 at p. 17; Dkt. Nos. 1-11, 1-14).

In addition, Defendants could have sought information relating to Plaintiff's Third Party Submissions from Plaintiff through interrogatories and/or requests for admission; Plaintiff's non-party attorney of record is not the only source of the sought-after topics. Yet, Defendants chose not to pursue such party discovery. Nonetheless, the Court recognizes that fact discovery has closed, except for resolution of this Motion. Defendants, however, have not requested the sought-after discovery from Plaintiff through any other mechanism nor sought leave to do so now that fact discovery has closed. As a result, the Court finds that Defendants had an opportunity but chose not to pursue the sought-after information through means less intrusive than deposing Plaintiff's counsel of record.

Finally, the Court considers the potential harm of Attorney Russo's deposition to Plaintiff's representational rights. The attorney-client privilege protects confidential disclosures made by a client to an attorney in order to obtain legal advice. *Memory Bowl*, 280 F.R.D. at 185 (citing *Wachtel v. Health Net, Inc.*, 482 F.3d 225, 230-31 (3d Cir. 2007)). The privilege aims to promote disclosure and communication between the attorney and client because "sound legal advice or advocacy serves public ends and . . . depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Additionally, the work product doctrine provides "near absolute protection from discovery" for those "mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) (quoting *in re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997)).

Here, Defendants seek to "explore [Attorney] Russo's factual knowledge at the time of filing the Third-Party Submissions, of the state of the prior art[,] and the choices made for the submission[,]" as well as whether Plaintiff added Dr. Katz as an inventor as a litigation tactic for this action. (Dkt. No. 97 at p. 15). Yet, such sought-after testimony from Plaintiff's counsel necessarily would call for information that is protected from disclosure by the attorney-client privilege and/or the work product doctrine, or, alternatively, for information already available to Defendants and/or more appropriately obtained from Plaintiff. Permitting such testimony of Attorney Russo may lead to a motion for disqualification of Plaintiff's counsel of its choosing and could harm Plaintiff's representational rights. Such a harmful result is not necessary in light of the quality and relevancy of the sought-after information and its availability from alternative sources, as discussed above. *See Recchia*, 2012 WL 762445, at * 6. Therefore, the Court finds this factor weighs against the deposition.

Accordingly, Attorney Russo has sufficiently established that the entry of a protective order is warranted because of the undue burden and lack of proportionality of the information sought through her deposition.

## IV. CONCLUSION

Having considered the submissions of the parties, and for the reasons set forth above,

**IT IS**, **THEREFORE**, on this **7th** day of **June 2023**, hereby

**ORDERED** that the Court **GRANTS** Attorney Russo's Motion for a Protective Order and **DENIES** Attorney Russo's Motion to Quash (Dkt. No. 88); and it is further

**ORDERED** that the Clerk of the Court shall hereby **TERMINATE** the Motion pending Docket Entry Number 88.

**SO ORDERED**.

/s/ Rukhsanah L. Singh
**RUKHSANAH L. SINGH**
**UNITED STATES MAGISTRATE JUDGE**